Kenneth SHELL and Dorothy Shell, Plaintiffs-Appellants-Respondents,

v.

Raymond SHELL and Dorothy Farrell, as Co-Executors of the Estate of Purl D. Shell, Raymond Shell and Dorothy Farrell, as individuals, Anita Shell, Nodaway Valley Bank of Maryville, Missouri, Carl Graham, Ed Brown and Ambrose Berg, Defendants-Respondents-Cross Appellants,

v.

Ada Mae NELSON, Helen Rice, Bonnie Lee Heriford, Danny James Shell, Kirby Shell, Dinah Shell Gaa, Rudy Shell (Since Deceased, Now Estate of Rudy Shell, Rosalee Zahnd, Administrator), and Dixie Shell Barber (Michael), Third-Party Defendants-Respondents.

No. WD 32720.

Missouri Court of Appeals, Western District.

July 27, 1982.

As Modified Aug. 31, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 31, 1982.

Application for Transfer Sustained Oct. 18, 1982.

Case Retransferred Sept. 20, 1983.

Court of Appeals Opinion Readopted Sept. 29, 1983.

W.H. Utz, Jr., Frank Thackery, St. Joseph, for defendants-respondents-cross appellants.

Frank H. Strong, Roger M. Prokes, Maryville, for plaintiffs-appellants-respondents.

Before CLARK, P.J., MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

Plaintiffs Kenneth and Dorothy Shell appeal from a judgment which denied them equitable reformation of an appraisal establishing the price to be paid in a purchase of farm land. In a cross appeal, defendants Raymond Shell and Dorothy Farrell take issue with that portion of the judgment granting plaintiffs enlarged time to complete the purchase. Affirmed in part and reversed in part.

This case was previously before this court on an appeal from entry of partial judgment. The appeal was dismissed as premature. *Shell v. Shell,* 605 S.W.2d 185 (Mo. App.1980). The facts are fully stated in that opinion but will be generally repeated here for the convenience of the reader.

Kenneth and Dorothy, together with Raymond and his wife, contracted to purchase a farm owned by Purl Shell, the father of Kenneth, Raymond and defendant Dorothy Farrell. The closing of the transaction was deferred until the death of Purl, at which time the purchase price was to be established by appraisal. With the exception of the delayed closing and the future ascertainment of the price, the transaction bore the indicia of a regular real estate sale, including a deposit of earnest money by the purchasers. Warranty deeds of conveyance to Kenneth and Raymond were signed by Purl and deposited in escrow.

The land contracted to be sold was essentially one farm which the contract itself purported to sell as a single tract to Kenneth and Raymond. The warranty deeds, however, conveyed separate tracts to Kenneth and his wife and to Raymond and his wife, the combination of the two deed descriptions being the equivalent of the entire tract described in the contract.[1] The earnest money deposit of $20,000 was unequally contributed, Kenneth having supplied $13,000 while Raymond deposited the balance. The acreage content of the farm was a matter of dispute, but the deed to Raymond covered approximately 81 acres while the deed to Kenneth conveyed at least three times that amount of land.

Purl Shell died February 15, 1976, some fourteen months after the sale contract was made. The appraisers were selected promptly, entered upon their duties and presented their report April 26, 1976. Various appraisal methods were tested and described in the report. The final valuation of $288,750 was reached by use of the mar-

---

1. Some variation in the legal description of the farm as contained in the contract from the combined descriptions of the two deeds delivered in escrow is noted here and was found by the trial court to require change in any deed given to Kenneth and his wife upon completion of that phase of the transaction. The parties make no complaint on that subject and we undertake no consideration of the discrepancy.

ket data approach, the appraised value having been based on 385 acres at $750 an acre. Although the sale contract contemplated no division of responsibility between Kenneth and Raymond for payment of the purchase price, the separate deeds posed the prospective necessity to apportion the aggregate valuation between the two unequal parcels. It is at this point the controversy emerges.

The appraisal report follows the statement of total valuation by repeating the description of the land appearing in the deed to Raymond and valuing that parcel at $58,725. No statement of valuation of the tract to be conveyed to Kenneth appears. According to the testimony by the appraisers, they established a value for the smaller tract, assumed to contain 81 acres, more or less, at $725 an acre because some of that land was wet and was suitable only for pasture. Raymond accepted the valuation of $58,725 as setting the sale price for his purchase, he paid the necessary additional amount to the escrow agent and received delivery of his deed.

Kenneth made immediate objection to the appraisers' report. He first complained of the assumption by the appraisers, as reflected in their report, that the entire farm consisted of 385 acres. A survey obtained by Kenneth and introduced in evidence showed the farm to contain 357.46 acres. This survey, however, was based on land within the fence lines and did not include highway and railroad rights-of-way which traversed the farm. While Kenneth made no objection to the figure of 81 acres as the amount of land deeded to Raymond and apparently makes no complaint as to the value of $725 per acre applied to that tract, he contends the aggregate value of the farm should be adjusted to a sum calculated by multiplying $750 times the actual acreage.

According to the same survey obtained by Kenneth, the parcel to be conveyed to him contained 276.468 acres. He has contended that the correct price to be assigned as the consideration for his purchase is $750 times the actual number of acres. That figure of $209,376 contrasts with $230,025, the difference between the appraisers' gross valuation and the amount paid by Raymond for the 81 acres deeded to him.

Two of the three appraisers who made the report testified. They explained that the property was described in the contract by metes and bounds with no representation as to the acreage content. Highway and railroad rights-of-way were excluded only in general terms. The appraisers did not rely on any survey or specific data as to acreage but they did estimate from several sources, not only the total land area but the numbers of acres with various soil compositions and the productive capacities of each. The valuation of $750 per acre took into account the fact that the land was not of uniform character.

The terms of the sale contract granted the purchasers nineteen months from the death of Purl to complete payment of the purchase price. Within that time, Kenneth informed the escrow agent that he was willing to pay the sum indicated by his survey to be the correct price and would tender that sum upon being advised that the deed would thereupon be delivered. No reply was made by the escrow agent and no actual tender or delivery of funds was made, then or later. Kenneth's ability to perform was the subject of some evidence. He did require a real estate loan to make the payment and anticipated selling some of the land to a neighbor to raise additional money. None of these transactions was completed and this action was commenced 100 days before the nineteen months expired.

The principal relief sought by plaintiffs, reformation of the appraisal to adjust the purchase price in accordance with a reduction in acreage, was denied. The trial court held the appraisal report to be clear and unambiguous and not indicative of any mistake by the appraisers. The court also held, however, that expiration of the nineteen months should not bar plaintiffs from completing the purchase at the original appraisal. Plaintiffs were therefore granted 100 days from final termination of this action in which to pay the purchase price if they

chose to do so. Other relief provided in the judgment was in the alternative, was incidental to the principal decision or affected other parties who have not appealed.

In their first point on appeal consisting of three sub-points, plaintiffs contend the decision by the trial court refusing to amend the appraisal was in error (a) because the appraisal included land in highway and railroad rights-of-way not owned by the grantor, (b) because division of the farm value by the price per acre yields a greater number of acres than the land actually owned, and (c) because the valuation date used in the appraisal was not the date required by the sale contract.

These first two sub-points present again the same contention plaintiffs have expressed since the appraisal report was first made. While plaintiffs accept the unit value of $750 an acre, they argue that valuation of the farm as whole or the tract which they are entitled to purchase must be the unit price multiplied by the quantity of fenced productive land as determined by survey. Because their survey showed less than 385 acres within the fence lines, plaintiffs contend the appraisers' report is in error and must be revised by substituting a different acreage quantity to be multiplied by $750. The trial court did not agree and refused to amend the appraisal.

In this equitable action, plaintiffs rely on the existence of a mistake in fact materially affecting the appraisal report. The relief of reformation is available only if plaintiffs have demonstrated, first, that the appraisers relied on a false assumption as to the quantity of acres which the farm contained and, second, that a different appraised value would have been returned had the correct acreage been known. The ultimate fact questions confronting the trial court were, therefore, whether the appraisers were indeed mistaken about the acreage and whether that mistake was translated into an overstatement of value and the sale price to Kenneth.

The issues so posed turn on questions of fact and the decision of the court below in this court-tried case must be affirmed un-less it is supported by no substantial evidence or is against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). For purposes of review, it is assumed the trial court accepted as true that evidence which conforms to the result reached. *McClelland v. Williamson,* 627 S.W.2d 94 (Mo.App.1982).

■ The decision by the trial court is amply supported by the evidence. Both appraisers who testified denied that any mistake had been made and, with the results of plaintiffs' survey in hand, they reaffirmed the valuation originally returned. As explained by the appraisers and demonstrated by the content of their report, the value of $750 per acre was not intended to represent any particular area of the farm, but was the appraised value of the entire farm as described in the sale contract. The land so described included that burdened with the highway and railroad rights-of-way and other features limiting tillable acreage. According to the appraisers, if value were to be based only on land within a fence line survey, the price per acre would be increased from that shown in the report.

However, the appraisers recognized in their report that the land in this farm was not of uniform value. Some of the land, including acreage to be purchased by Kenneth, was highly productive and was valued at $900 an acre. Other land, including a portion of that sold to Raymond, had drainage and erosion problems and was valued as low as $500 an acre. All of these factors were taken into account in reaching the mean figure of $750. It is self-evident that the value of $750 an acre was not intended to be uniformly applied to establish market value for any portion of the farm sub-divided and set apart from the whole. The validity of this conclusion is affirmed by the adjustment made in the acreage price where the tract set off to Raymond was separately appraised.

The evidence supports the conclusion by the trial court that the appraisal was not the product of mistake.

In their third sub-point, plaintiffs note that the appraisal report indicates a valuation date of April 12, 1976. This, they contend, required the trial court to use its equitable power to reform the report because the sale contract required the value to be set as of the date of death of Purl Shell, February 15, 1976.

The difficulty with this contention is that it is presented for the first time on this appeal. Plaintiffs' petition made no complaint about the appraisal on this ground, no relief in revising the value to a different date was sought and, more importantly, there was no evidence that value had changed between February and April or, if so, whether up or down. The point is simply not available to be considered because not presented timely.

In their second principal point, plaintiffs take issue with the finding by the trial court that no tender of payment of the purchase price was made within nineteen months of the date of death of Purl Shell. As a sufficient tender, plaintiffs rely on a letter from their attorney to the escrow agent reciting their willingness and ability to pay the reduced price computed in accordance with their fence boundary survey but contingent on delivery of the deed and possession of the land. All parties were then aware that the property was occupied by defendants Benjamin and Nancy Farrell under a lease made by Purl Shell September 30, 1975 for a term scheduled to expire February 28, 1978. Admittedly, the escrow agent was powerless to terminate the lease or eject the tenants.

Irrespective of other arguable deficiencies in plaintiffs' purported tender, preservation of any purchase rights under the contract depended on ultimate validation of plaintiffs' claim to a corrective reduction in the purchase price. This follows because plaintiffs did not at the time and have not subsequently offered to pay any sum except that computed from the fence line survey. As we have concluded above, the claim to a revision in the purchase price was without merit. The tender, if it be construed as such, was insufficient because not in the amount the contract required. The trial court's decision on this point is entitled to affirmance on this ground alone.

Cross appellants contend in their appeal that the trial court was in error by restoring life to the contract by granting plaintiffs additional time, at their election, to conclude the purchase at the original appraisal. Because that issue is interrelated with the asserted forfeiture of plaintiffs' contract rights for failure to tender the purchase money, the cross appellants' contention is appropriately considered at this time.

Cross appellants argue that plaintiffs breached the sale contract by failing to pay the purchase money within nineteen months as the contract required. They further contend that the extension of time granted by the court amounts to a judicial modification of the contract and is unwarranted under any legal theory where the principal issue, reformation of the appraisal, has been decided adversely to plaintiffs. The latter counter by contending that the delay was occasioned by a good faith effort to secure clarification of the ambiguous appraisal and they should not be penalized because they resorted to litigation to resolve an honest dispute.

Plaintiffs' position on this point is untenable for several reasons. In the first place, plaintiffs' pleadings make no claim to the relief the court granted. While Count V of plaintiffs' petition does pray for an extension of time to tender the purchase price, that relief is sought only as an adjunct to a revision in the appraisal. Plaintiffs made no plea for a tolling of the nineteen-month period generally nor did they seek the alternative opportunity to purchase at the original price if the issue litigated was not resolved in their favor. Indeed, plaintiffs have been adamant in their insistence that the purchase be completed only on the price they computed. Plaintiffs have made no offer to accept the higher price nor is there any indication in this record that plaintiffs could or would buy the property at the appraised value.

The basis upon which plaintiffs invoked the equitable jurisdiction of the court to extend the time for performance under the contract was a mistake or ambiguity in the appraisal. That issue was resolved by the trial court against plaintiffs. Necessarily, any enlargement of time for performance must also be denied because plaintiffs' default is unexcused and their purchase right under the contract has been forfeited. The trial court erred in that portion of its judgment which granted plaintiffs 100 days to tender the balance of the appraisal purchase price.[2]

In another point, plaintiffs take issue with the trial court's finding that the sale contract was severable and that the completed transaction for Raymond's purchase was not to be rescinded. This point originates from the circumstances, earlier noted, of a single contract for purchase of the farm by Kenneth and Raymond, but a division of the purchase evidenced by the two warranty deeds. Plaintiffs argue that the contract was a joint agreement by Kenneth and Raymond to purchase and if plaintiffs are denied the opportunity to close the transaction, the agreement fails and the property deeded to Raymond must be reconveyed.

The evidence does not disclose why Purl Shell failed to conform the sale contract to the division of the land reflected by the deeds or, alternatively, why a single deed to Kenneth and Raymond was not deposited as the contract would seem to have required. The agreement for sale was thus ambiguous because adherence to the literal terms of the contract would require rejection of the form in which the deeds were drawn, while acceptance of the separate deeds accomplishes a variation from the sale as ostensibly defined by the contract.

The practical construction which the parties themselves place on an agree-ment is of considerable significance in ascertaining the meaning of the terms of an ambiguous contract. *Modine Manufacturing Company v. Carlock,* 510 S.W.2d 462, 468 (Mo.1974). The meaning of an ambiguous contract is determined in light of the extrinsic circumstances. *Penney v. White,* 594 S.W.2d 632, 638 (Mo.App.1980). The intent of the parties concerning the effect of instruments may be inferred from their words and acts preceding, attending and subsequent to the execution of the instruments. *Keith v. Keith,* 599 S.W.2d 214, 217 (Mo.App.1980). The rule as to what constitutes an entire as compared to a severable contract can be stated only in general terms. The test is to inquire whether the parties assented to all the promises as a single whole so there was no agreement should any promise or set of promises be stricken. *B & B Equipment Co., Inc. v. Bowen,* 581 S.W.2d 80, 87 (Mo.App.1979).

The evidence in this case shows the deeds were made by Purl Shell on the same date which appears on the contract. The subject was discussed among the parties at the time, but evidence as to the content of the conversations was not admitted because of the intervening death of Purl, one of the contracting parties. All of the surrounding circumstances, however, including the disproportionate contributions of Kenneth and Raymond to the earnest money deposit and the conformity of the one deed description to the land Raymond had been farming, lead to the inference that Kenneth and Raymond were currently aware of the division accomplished by the escrowed deeds. Acceptance of this implementation of the contract as a divisible purchase arrangement is evidenced by the failure of Kenneth to raise any objection upon his father's death or upon the completion of Raymond's purchase. Moreover, Kenneth has always claimed to be ready and willing to purchase

---

2. Even were it assumed that this equitable proceeding was of sufficient dimension to empower the trial court to fashion a judgment beyond the limits of the pleadings, the findings made by the trial court are inconsistent with the relief given. The court expressly found that plaintiffs had neither reasonable nor probable cause to question the appraisers' report either as to the acreage computation or the valuation. If the valuation contest was without substance, there can be no underpinning for a judgment granting plaintiffs the speculative opportunity to enforce the contract at this late hour.

the lands included in the separate conveyance to him save only for the dispute over price.

■ No contention has been made by Kenneth that his purchase was affected in any way by the completion of the sale to Raymond nor does he suggest why any interdependency of the two transactions resulted except by reason of the variance between the contract and the deeds which implemented it. Kenneth's objection to valuation was also lodged on independent grounds, there having been no issue as to the acreage content or valuation of Raymond's tract. Extrinsic circumstances and the conduct of the parties at the time the contract was made and thereafter require the conclusion that the two purchases were agreed upon by Purl and his sons as a division of the farm to be accomplished by the vehicle of the deeds and that this agreement modified the contract and rendered the transactions severable. The trial court correctly ruled the point to this effect.

Plaintiffs also raise additional points contending that deposition evidence was erroneously excluded and that the decision of the trial court denying plaintiffs damages was against the weight of the evidence. The points have been reviewed and found to be without merit.

The judgment granting plaintiffs 100 days in which to pay to the Nodaway Valley Bank $230,025.00 less the escrow deposit and to receive therefor the escrowed deed, a deed from co-executors Raymond Shell and Dorothy Farrell, and possession of the land is reversed. The balance of the judgment is affirmed and the cause is remanded for proceedings in partition as there decreed.

All concur.