**YOUNG DENTAL MANUFACTURING COMPANY, Respondent,**

v.

**ENGINEERED PRODUCTS, INC., Appellant.**

No. 59943.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 1, 1992.

Thomas Michael Blumenthal, Eileen J. Markey, Clayton, for appellant.

Peter W. Herzog, Jr., Sheila K. O'Malley, St. Louis, for respondent.

SATZ, Judge.

This is a breach of contract action. Defendant, Engineered Products, Inc., appeals from a jury verdict and judgment in favor of plaintiff, Young Dental Manufacturing Company. We reverse.

The parties characterize the contract in issue as a bailment contract. The dispute arises over the meaning of the contractual term "scrapped". Defendant argues the term is unambiguous. Plaintiff argues it is ambiguous.

Plaintiff entered into the contract with defendant in January 1983. The contract provided that defendant, a custom injection molding specialist, produce certain parts for plaintiff. Plaintiff shipped to defendant three custom injection molds, a base, dome, and chimney mold.[1] Using two of the molds, a base and dome, defendant ran a production of parts in April, 1983. About four years later, in September or October, 1987, plaintiff requested the return of several molds, including the three molds shipped in early 1983 pursuant to the contract in issue. While defendant was able to return several other molds, it was unable to locate and return the base and dome molds.

The reverse side of the contract states: "Dies, tools and fixtures will be held for your [plaintiff's] exclusive use.... Tools, dies and fixtures not used for a period of three years may be scrapped." Defendant did not produce any parts for plaintiff using the chimney, base, or dome molds at any time after April, 1983. Thus, the molds had not been used for over four years when plaintiff requested their return in 1987. Plaintiff sought damages for those molds not returned.

Plaintiff's legal position throughout trial was that the contractual term "scrapped" required evidence extrinsic to the contract to determine the term's correct meaning. Defendant's defense was that the term "scrapped" was unambiguous and, thus, required no extrinsic evidence to determine its obvious, plain meaning. At the close of the entire case, defendant moved for a directed verdict on the grounds, among others, that the plain meaning of the term gave it the unconditional privilege to dispose of the molds if not used for three years. The court denied the motion. The jury returned a verdict in favor of plaintiff and awarded it $6,402.00 as damages. Defendant's appeal followed.

Defendant raises several issues on appeal. One is the contention that the term "scrapped" is unambiguous and, therefore, needs no extrinsic evidence to determine its correct meaning. We agree. This issue is determinative, and, thus, we address only it.

As noted, the parties disagree about the meaning of the contractual term "scrapped" in the sentence: "Tools, dies and fixtures not used for a period of three years may be scrapped." This disagreement stems from their disagreement over whether the term "scrapped" is unambiguous.

Whether a contract is ambiguous is a question of law. *Harris v. Union Electric Co.*, 622 S.W.2d 239, 247 (Mo.App. 1981); *Busch & Latta Painting v. State Highway Com'n.*, 597 S.W.2d 189, 197 (Mo. App.1980). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms." *Union Center Redevelopment Corp. v. Leslie*, 733 S.W.2d 6, 9 (Mo.App.1987); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). A contract is not

---

1. The "base" and "dome" molds were two parts of a single "cavity mold".

ambiguous merely because the parties disagree over its meaning. *Hathman,* 491 S.W.2d at 264; *Union Center,* 733 S.W.2d at 9. To determine whether a contract is ambiguous, we consider the whole instrument and give the words in the contract their natural and ordinary meaning. *Hathman,* 491 S.W.2d at 264; *e.g., Union Center,* 733 S.W.2d at 9. Forced or strained meanings should not be used. *E.g., Grantham v. Rockhurst Univ.,* 563 S.W.2d 147, 150–151 (Mo.App.1978). Extrinsic or parol evidence cannot be used to create an ambiguity. *Harris,* 622 S.W.2d at 247.

■ There are two kinds of ambiguity, patent and latent. The terms patent and latent are borrowed from the area of wills and trusts, where the issue is the testator's intent, not the intent of parties to contract. A patent ambiguity arises from the face of the document; a latent ambiguity arises when the particular words of a document apply equally well to two different objects or some external circumstances makes their meaning uncertain. *Busch & Latta Painting, supra,* 597 S.W.2d at 197; *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 912 (Mo.App.1984).

■ Simply put, to paraphrase Professor Corbin, we should take people as they are and language as it is. Admittedly, a dictionary does not and cannot give all the possible meanings of a word. It can, however, give the meaning which is the ordinary meaning when used in common parlance. And, when that meaning is common enough, a court should not indulge in the vagaries of the legal mind to seek an uncommon meaning.

■ The meaning of "scrap" or "scrapped" has such an ordinary, everyday meaning. "Scrapped" is defined as "to make into scrap: dispose of as scrap often for salvage; to abandon or get rid of as no longer of enough worth or merit, use, or effectiveness to retain." *Webster's Third New International Dictionary* 2039 (unabridged) (1967). "Scrap" is also defined as "being in the form of scraps or fragments: valuable only as raw material." *Id.* The synonym offered by Webster's dictionary for "scrap" is "discard". *Id.* Thus, to discard, to dispose of, or to abandon is the plain, common sense, ordinary meaning of the term "to scrap" and "scrapped" follows this meaning.

Nonetheless, plaintiff argues the contractual term "scrapped" is ambiguous. To support this argument, plaintiff relies on the testimony of two of its witnesses, Mr. Fred Langhauser and Mr. Don Vineyard, and one of defendant's witnesses, Mr. Ronald McGee. Plaintiff's two witnesses described defendant's conduct with relation to other molds sent to defendant by plaintiff, and this conduct, plaintiff argues, is a manifestation of how defendant would or did interpret the contractual term "scrapped" in issue here.

Plaintiff's counsel asked Mr. Langhauser, formerly defendant's General Manager:

Q: Did [defendant] ever dispose of [plaintiff's] molds to your knowledge, sir, without giving [plaintiff] any opportunity to reclaim it.

After the court overruled defendant's objection, Mr. Langhauser answered:

A: I think the answer is no, if I recall the question.

Then, Mr. Vineyard, plaintiff's former "purchasing manager", testified that, during the course of the parties' business relationship, plaintiff transferred at least six other molds to defendant. Two of these molds had not been used by defendant for over three years, but, he said, defendant nonetheless returned these two molds to plaintiff.

To plaintiff, defendant's described conduct with reference to other molds shows that defendant believed it could not unconditionally dispose of molds unused for three years; rather, plaintiff argues, defendant's conduct shows defendant believed it must afford plaintiff the opportunity to reclaim any mold before defendant disposed of it. Defendant's interpretation, manifested by its conduct, plaintiff argues, shows "scrapped" has a reasonable interpretation other than the unconditional privilege to dispose of or discard. "Scrapped" is, therefore, ambiguous, plaintiff reasons,

and the ambiguity must be resolved by a jury.

◼ Plaintiff's argument stands the rule governing ambiguity of a contract term on its head. The contract term, first, must be shown to be ambiguous before extrinsic evidence may be used to show the correct meaning of that term. *E.g., Busch & Latta Painting, supra,* 597 S.W.2d at 197–199. Extrinsic evidence may not be used to create an ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that unambiguously expressed in the contract. *E.g., Sedalia Mercantile Bank & Trust v. Loges Farms, Inc.,* 740 S.W.2d 188, 193 (Mo.App.1987). It is after, not before, a contract is determined to be ambiguous that extrinsic evidence is admissible to resolve the ambiguity. *Busch & Latta Painting, supra.*

Plaintiff also relies on the testimony of Mr. McGee, defendant's Vice President and General Manager. On direct examination, the following colloquy took place:

Q: Now, sir, on the back of the [contract] form ... there is a reference in Paragraph 4 to the term "scrapped". Is that a term with which you're familiar?

A: Yes, it is.

Q: What does it mean, sir?

A: Scrapped would indicate that the mold would be disposed of in a fashion—you would call in a scrap dealer to come in and haul it off.

Q: Does it necessarily mean the tooling is removed from the premises?

A: Not necessarily.

.    .    .    .    .

Q: So when [other molds for other customers] are not run on a regular basis is there enough room at [defendant's] to store them in one area?

A: No.

Q: What would you do with it?

A: We isolate it over in a corner or possibly store it outside.

Q: Is that what you refer to as scrap?

A: Yes.

.    .    .    .    .

[cross-examination]

Q: Mr. McGee, you testified on direct examination that your understanding of "scrapped" means that you can isolate it and put it outside, is that correct?

A: Put on inactive service.

Plaintiff isolates and focuses on one part of Mr. McGee's testimony to read the entire testimony as stating "that the term 'scrapped' did 'not necessarily' mean that an inactive mold would be removed from the premises, but that it would be isolated in a corner of the building or stored outside." From this narrowly focused reading, plaintiff infers that defendant believed the contract terms required it to save molds for plaintiff to reclaim, rather than believing the contract permitted it, unconditionally, to dispose of molds unused for three years.

Plaintiff views Mr. McGee's testimony too narrowly and reads too much into this narrow view. On direct, Mr. McGee stated "scrapped" means defendant could dispose of the mold by calling in a scrap dealer to haul it away. Mr. McGee did not give another definition of "scrapped", rather, he merely suggested what defendant might do with unused molds other than dispose of them by giving them to a scrap dealer. The fact that defendant for convenience might "isolate" molds in a corner or store them outside does not sensibly imply defendant believed it was required to save them for plaintiff. The clear thrust of Mr. McGee's testimony was defendant could call "in a scrap dealer and haul [the molds] off" after three years, without condition.

More important, perhaps, plaintiff's argument is not based upon an interpretation of the contract which does no damage to the sense of the contract. Plaintiff's argument guts the sense of the contract.

Plaintiff's interpretation requires defendant to afford it the opportunity to reclaim the molds even though they were not used for a period of three years. But, the precise language of the provision in question states that molds "not used for a period of three years may be scrapped." By negative inference, the provision requires defen-

dant to save and store unused molds for plaintiff for three years. This reflects the contractual protection of plaintiff's property interest in or rights to the molds for a three year period, in this contract the parties both characterize as a "bailment contract". Plaintiff's reading, however, would eliminate the three year period, protect its property interest in or rights to the molds indefinitely and require defendant to afford it the opportunity to exercise its rights indefinitely. The express and specific three year time limit, thus, would become meaningless. Quite simply, plaintiff has not shown the contract term "scrapped" has more than one reasonable meaning.

Plaintiff cites several cases which, it argues, approve of the use of the parties' interpretation of a contract to determine the correct meaning of the contract: *Shell v. Shell*, 658 S.W.2d 439 (Mo.App.1982); *Johnston v. First Nat'l. Bank and Trust*, 624 S.W.2d 500 (Mo.App.1981); *South Side Realty Co. v. Hamblin*, 387 S.W.2d 224 (Mo.App.1964); *Zeppenfeld v. Morgan*, 168 S.W.2d 971 (Mo.App.1943). None of these cases help plaintiff.

In three of the cases, the contract in issue was ambiguous, and, before the court relied on the parties' interpretation of the contract, it stated the principle that the contract must be shown to be ambiguous before extrinsic evidence may be used to resolve any asserted ambiguity. *Shell*, 658 S.W.2d at 444; *First Nat'l. Bank and Trust*, 624 S.W.2d at 502; *Zeppenfeld*, 168 S.W.2d at 976. In the remaining case, *South Side Realty Co.*, the appellant argued the contract in issue was unenforceable because it lacked mutuality of obligation. 387 S.W.2d at 228. The court, however, found the contract clearly showed mutual obligations. *Id.* at 228–229. Thus, neither party's interpretation was necessary to this determination, and the court's reference to the appellant's interpretation was dicta. *Id.* at 229.

We have addressed only those arguments made by the parties on this issue of interpretation. Therefore, we have not addressed other arguments which, arguably, could be based upon the concepts of trade usage, the course of dealing between the parties prior to the execution of the contract or the course of performance of the parties after execution of the contract. However, in mentioning those concepts now, we do not intend to imply that, on the present record, any of them are relevant to the interpretation issue here.

Judgment reversed. The trial court is directed to enter judgment in favor of defendant, notwithstanding the verdict.

CRANDALL, P.J., and LIMBAUGH, J., concur.