**Pauline CLAMPIT, et al., Respondent,**

v.

**CAMBRIDGE PHASE II CORPORATION, Now Known as Cambridge Leasing Corporation, Appellant.**

**No. 64470.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 23, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 20, 1994.

Application to Transfer Denied
Oct. 25, 1994.

Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Clayton, for respondent.

Cordell P. Schulten, Lewis, Rice & Fingersh, St. Louis, for appellant.

SIMON, Presiding Judge.

Cambridge Phase II Corporation (now known as Cambridge Leasing Corporation), appellant, appeals a declaratory judgment in favor of Pauline Clampit, Margaret Littleton, Lee K. Schwartz and Betty Schwartz, respondents, granting them an easement in perpetuity to use the common elements and common areas, including the swimming pool located on appellant's property.

In its point on appeal, appellant asserts that the trial court erred in granting a declaratory judgment in favor of the respondents because its conclusion is contrary to both the evidence adduced at trial, including the express language of the condominium declarations at issue, and the settled principles of law applicable to construing legal instruments and to creating consensual easements. We reverse and remand.

Appellant owns Aspen Ridge Condominium, which was once part of a development known as Country Club Estates. The development was divided into sections, with Cambridge Courts Condominium (formerly Country Club Estates Condominium, Section I) and Aspen Ridge Condominium (formerly Cambridge Courts Condominium, Section II) comprising the majority of the development. Respondents are residents and owners of condominium units in the first section, Cambridge Courts Condominium. Each development is governed by a separate condominium declaration.

On October 24, 1974, the original Condominium Declaration for Country Club Estates Condominium, Section I (now Cambridge Courts Condominium) was executed, and provides in pertinent part:

ARTICLE 3: COMMON ELEMENTS:

Section 3.1: Included in the common elements are:

(a) The property excepting the units, and including parking facilities, driveways, parking areas, gardens, lawns and sidewalks....

....

(e) Any auxiliary buildings, maintenance buildings, park area, swimming pools, recreation buildings and any other structures which may at any time be erected or situated on the property....

ARTICLE FIVE: EASEMENTS:

Section 5.5: Cross–Easements:

Cross-easements are hereby established between each [Cambridge Courts] Condominium and Country Club Estates Development whereby the Developer, owners, unit owners, their families, tenants, guests, invitees, servants and agents shall be permitted to use the roads, pedestrian walks, unassigned parking spaces and *common gardens and lawn areas of [Cambridge Courts] Condominium and Country Club Estates Development as are now or hereafter established.* In the event any [Cambridge Courts] Condominium or Country Club Estates Development does not provide for a reciprocal cross-easement, then this Section 5.5 shall not be operative with respect to such Condominium Development. [Emphasis ours.]

Construction of Cambridge Courts Condominium was completed in 1976 and constituted the only residential units in the entire development. In 1975, a swimming pool was built on the northern tip of the Aspen Ridge tract. In August 1976, the First Amendment to the original Condominium Declaration was recorded ("Amendment I"). Amendment I provided for changes in the expenses section of the Declaration, referring to a Trust Indenture that was recorded on the same day that grants the Trustees of the condominium authority to make assessments for certain expenses, including a specific assessment for the maintenance and upkeep of the swimming pool. The Trust Indenture was discontinued in 1978.

The Second Amendment to the Cambridge Courts Declaration was recorded in April, 1977 ("Amendment II"), and adds the following description of a parcel of land named Country Club Estates Development, found in Section 5.5, which reads, "the entire 10.061 acres, more or less, described on Exhibit D hereto." The Third Amendment, recorded in June, 1978, changed the name of the condominium from "Country Club Estates" to "Cambridge Courts."

In 1979, appellant purchased Section II of Cambridge Courts, and on April 4, 1980, a declaration was recorded for Cambridge Courts Condominium II, now Aspen Ridge ("Aspen Ridge Declaration") the following year. Construction of Aspen Ridge Condominium commenced in 1980. The Aspen Ridge Declaration provides in pertinent part:

ARTICLE V

COMMON ELEMENTS

A. *DESCRIPTION:*

The common elements consists of all portions of the Development, other than the Units. Without limiting the generality of the foregoing, the Common Elements shall include the land, outside walks and driveways, landscaping, outside parking areas, stairs, outside decks, a swimming pool, entrances and exits, structural parts of the Buildings, basements, or crawl spaces, attics, pipes, ducts, flues, chutes, conduits, wires and other utility installations to the outlets, and such component parts of walls, floors and ceilings as are not located within the Units.....

ARTICLE VI

GENERAL PROVISIONS AS TO UNITS AND COMMON ELEMENTS

....

C. *SECTION I EASEMENTS:*

(1) In conformity with Section 5.5 of the Declaration of [Cambridge Courts] Condo-

minium ... as amended and recorded ... and in consideration for the easements granted therein, easements are hereby established between [Aspen Ridge Condominium] and Cambridge Courts Condominium formerly known as Country Club Estates Condominium Section I whose Declaration of Condominium as amended is referred to above ... whereby the Cambridge Courts Condominium ... unit owners and their families, tenants, guests, invitees, servants and agents shall be permitted to use the roads, streets, access drives and pedestrian walks, unassigned parking spaces and *common gardens or lawn areas of [Aspen Ridge] Condominiums*. [Emphasis ours.]

Subsection (2) of "Section I Easements" provides that expenses for Claytonbrook Drive and the swimming pool shall be shared with Cambridge Courts Condominium. Subsection (3) reiterates that Cambridge Courts and Aspen Ridge are separate entities, by providing:

Notwithstanding the aforesaid easements and shared expenses described in this Paragraph C, [Aspen Ridge] Condominium and Cambridge Courts Condominium are governed by separate and independent condominium declarations and [Aspen Ridge] Condominium shall not be considered a part of or "add-on" to Cambridge Courts Condominium.

The plat attached to the Aspen Ridge Declaration does not indicate a pool. The pool is not specifically identified on the plat.

In July, 1987, an Amended and Restated Declaration was recorded for Aspen Ridge Condominium ("Amended Aspen Ridge Declaration"), and it contains the same provision found in the Aspen Ridge Declaration granting corresponding cross-easements to Cambridge Courts Condominium. It also contains a comparable provision for shared expenses for the maintenance and upkeep of the swimming pool located in Aspen Ridge. In addition, the Amended Aspen Ridge Declaration grants an easement over the swimming pool and the common elements to and from the swimming pool to owners of the "Adjoining Property," which later became Aspen Ridge, Section II.

Respondents contend that from the time Cambridge Court owners first moved into their units in 1975 and up until 1991, they utilized the swimming pool without any question or challenge from anyone. Further, from 1979 until 1991, Cambridge Courts' managing partner and the Board of Managers handled all maintenance and repairs of the pool. Cambridge Courts supplied the electricity; paid 100% of all pool expenses in 1979 through 1981, and after 1982 allocated expenses of the pool between the new residents of Aspen Ridge and Cambridge Courts by invoicing Aspen Ridge for its pro rata share; and supplied the water to the pool until 1980, when it began to pay Aspen Ridge for its pro rata share of water for the swimming pool. Brochures advertising the sale of Cambridge Courts units included pictures and a description of the swimming pool.

In 1991, appellant proposed that respondents open a cul-de-sac on Claytonbrook Drive for a through road, in order to provide better access for its "Adjoining Property" development. Respondents turned down the proposal. Appellant later stated that if respondents gave their permission to open the cul-de-sac, appellant would continue to let respondents use the swimming pool. Appellant did manage to get a street through the cul-de-sac, against the wishes of the respondents. The pool remained open to respondents until the beginning of July, 1992.

In April, 1992, respondents filed an action seeking a declaratory judgment contending that the indentures and declarations of the Cambridge Courts Condominium, which are covenants running with the land, grant to respondents in perpetuity, the easement and the right to use the common areas, including the swimming pool, in the Aspen Ridge Condominium development. Respondents also sought to permanently enjoin appellant from preventing or interfering with respondents' reasonable use of said common areas and swimming pool.

In its Answer, appellant maintained that respondents did not have "an easement or other right arising out of alleged cross-easements" to use the swimming pool, but rather a license. Appellant further answered by

way of affirmative defense that respondents were barred from obtaining equitable relief sought in their Petition as a result of: (1) their unclean hands; (2) their being in pari delicto; (3) the doctrine of laches; (4) waiver and estoppel; and (5) the prior agreements relating to the swimming pool use by respondents and respondents' predecessors-in-interest which constitute an accord and satisfaction of the claims asserted by the respondents.

Appellant also filed a two-count counterclaim against all residents and owners of Cambridge Courts. In Count I, appellant alleged that respondents have only been granted a license to use the swimming pool in consideration for an agreement to share in the maintenance and upkeep expenses of the swimming pool. Appellant further prayed for the trial court to issue a declaratory judgment finding and declaring that each unit owner of a condominium in Cambridge Courts does not have an easement to use the swimming pool. In Count II, appellant sought damages for breach of contract, alleging that respondents failed to make payment for certain expenses incurred in conjunction with respondents' usage of the swimming pool.

During a two-day trial, respondents offered the expert testimony of Mr. Robert Flynn, a real estate officer with Old Republic Title Company of St. Louis. Mr. Flynn concluded that the swimming area was subject to an easement in favor of the unit owners in Cambridge Courts. According to Flynn, "common gardens and lawn areas" is the same as "common elements" in these condominium declarations. Further, Flynn testified that if asked to issue title insurance on the Aspen Ridge Condominium development, he would report such an easement as an encumbrance upon the title and as an exception to the title of the property.

On June 7, 1993, in its judgment, without findings of fact and conclusions of law, the trial court declared:

That plaintiffs and each owner of a condominium unit in Cambridge Court Condominiums, a condominium development in St. Louis County, Missouri, have an easement in perpetuity to use the common elements and common areas, including the swimming pool, located in Aspen Ridge Section I Condominium presently owned by Defendant.

The trial court held Count II of appellant's counterclaim in abeyance pending final disposition of the easement by the Court of Appeals.

On June 16, 1993, appellant filed a Motion For Reconsideration, to Amend Judgment and for New Trial. This motion was granted in part and denied in part by an order entered on July 29, 1993, denying the amending of the paragraph of its Judgment concerning the easement, but amending a paragraph of the Judgment concerning shared expenses, and also finding that there was no just reason for delay, pursuant to Rule 74.01(b), for entry of judgment on respondents' Petition and Count I of appellant's counterclaim. This appeal followed.

In its point on appeal, appellant contends that the trial court erred by concluding that respondents have an easement in perpetuity to use the common elements and common areas, including the swimming pool, located in Aspen Ridge, because this conclusion is contrary to both the evidence adduced at trial, including the express language of the condominium declarations at issue, and the settled principles of law applicable to construing legal instruments and to creating consensual easements. Thus, appellant argues that no easement was granted to respondents for the use of appellant's swimming pool. In its brief, appellant argues that the instruments relating to the parcels of land are clear and unambiguous, and "thus, there is no need for this court to resort to extrinsic evidence as an aid to construction."

Respondents maintain the trial court's conclusion that each owner of Cambridge Courts Condominium has an easement in perpetuity to use the common elements and common areas, including the swimming pool of Aspen Ridge, is supported by substantial and competent evidence. Respondents contend that such evidence includes (1) the plain language of the Aspen Ridge Declaration that grants the easement; (2) the attached plat which designated the area in which the pool was

located as a common area; (3) the unrebutted credible testimony of expert witness Robert Flynn; and (4) the unrebutted credible testimony of Cambridge Court owners. Respondents contend that the plain language of the Aspen Ridge Declaration gives them an easement to use appellant's swimming pool. Respondents further state that if any ambiguity exists, it is to be construed as it is understood and acted upon by the parties. Respondents contend that "the actions of the parties indicate that the appellant did in fact intend to grant respondents an easement to use the common garden or lawn areas, including the swimming pool." Essentially, respondents argue that the term "common garden and lawn areas" used in the easement grant includes the swimming pool.

■ The trial court's judgment must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

■ Condominium ownership is a creature of statute. *See* § 448.005, et seq., R.S.Mo.1986 ("Condominium Property Act"). The principles of law and equity are applicable. § 448.1–108 R.S.Mo.1986. The declaration of condominium and its amendments should be construed strictly to assure investors that what the buyer sees the buyer gets, and that equity cannot aid in effecting what ought to have been done in contravention of the Declaration. *Bradley v. Mullenix,* 763 S.W.2d 272, 276[4, 5] (Mo.App.E.D.1988).

■ An easement is a right to only one or more particular uses of land. *Farmers Drainage District v. Sinclair Refining Co.,* 255 S.W.2d 745, 748[2] (Mo.1953). Just as a deed conveying an easement must ordinarily describe the land to which the use attaches, and also describe the particular use or uses permitted, *id.,* so too should this hold for a declaration of condominium. Whether a document is ambiguous is a question of law. *See Young Dental Manufacturing v. Engineered Products, Inc.,* 838 S.W.2d 154, 155[1–3] (Mo. App.E.D.1992). It is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in the construction of the terms. *Id.* To determine whether a document is ambiguous, we consider the whole instrument and give the words their natural and ordinary meaning. *Id.* at 156. That natural and ordinary meaning is derived from the dictionary. *Boone County Court v. State,* 631 S.W.2d 321, 324[4] (Mo. banc 1982). Where no ambiguity exists, the intention of the parties must be gathered from the documents alone and not from the acts and deeds of the parties involved. *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 814[8] (Mo.App.E.D.1992).

■ In order to arrive at a determination of whether or not the swimming pool is included in the cross-easements of the documents, it is necessary to examine the language of the cross-easements. Appellant contends that the language does not include the swimming pool, whereas respondents allege that the swimming pool is included in the term "common garden and lawn areas" in Section 5.5 of the Cambridge Courts Declaration, and in the term "common gardens or lawn areas" in Article VI(C)(1) of the Aspen Ridge Declaration.

Section 3.1 of the Cambridge Courts Declaration defines the term "common elements" to include gardens, lawns, sidewalks, and any buildings, park area, and swimming pools which may at any time be erected or situated on the property. Those specified common elements subject to the cross-easement provision, Section 5.5 of the Declaration, are specifically enumerated and there is no blanket reference to the term "common elements." Section 5.5 granting cross-easements does not mention a swimming pool. It should be noted that the reference to the term "swimming pools" is distinct and separate from the reference to gardens, lawns and sidewalks.

Article V(A) of the Aspen Ridge Declaration describes "common elements" as "that portion of the development, other than the Units," and includes a listing of certain common elements, including the land, outside walks and driveways, outside parking areas, stairs, outside decks, and a swimming pool. Article VI(C), entitled "Section I Easements" establishes the cross-easements to Cam-

bridge Courts Condominium. Through this section, Aspen Ridge, in accordance with Section 5.5 of the Cambridge Courts Declaration, grants unit owners of Cambridge Courts and their families, tenants, guests, invitees, servants and agents the right to use roads, streets, access drives and pedestrian walks, unassigned parking spaces and common garden or lawn areas of Aspen Ridge.

In this easement grant, the term "common elements" is not used specifically. Rather, cross-easements were given for certain, specific common elements expressed in the grant—none of which include the swimming pool. No easements were granted by Aspen Ridge to Cambridge Courts for the use of common elements generally, or the swimming pool specifically, as these terms were not used in this section.

Article VI(C)(2) provides for the sharing of expenses for certain elements used by both Aspen Ridge and Cambridge Courts, including Claytonbrook Road and the swimming pool. Respondents argue that (1) because this provision is listed under a section titled "Section I Easements" and (2) there is an established easement for Claytonbrook Road, for which expenses will be shared, they have an easement in the swimming pool, as well.

Respondents contend that appellant intended the swimming pool to be part of the general open area to which the cross-easements applied. Respondents point to the plat attached with the Aspen Ridge Declaration. No swimming pool is designated on the attached plat. Rather, the plat indicates the location where the pool now lies as open space—a place where one might find common garden or lawn areas. Respondents argue that because the pool was not specifically designated on the plat, though in existence for five years prior to the recording of the Aspen Ridge Declaration, appellant intended to grant an easement in the swimming pool.

Respondents' argument suggests that the plat drawings are controlling over the specific language in the declaration itself which discriminates between the various aspects included within the definition of "common elements." Respondents erroneously attempt to equate the term "common garden and lawn areas" with the term "common areas."

However, neither declaration, in the common elements or easements sections, uses the term "common areas."

Finally, respondents argue that "the unrebutted credible testimony of Cambridge Courts owners" serves as substantial and competent evidence that they have an easement in Aspen Ridge's swimming pool. At trial, Cambridge Courts residents testified that it was their original belief that the pool was part of Cambridge Courts. However, we do not need to construe this testimony as no ambiguity exists. *See Byers,* 834 S.W.2d at 814[8].

Our review of the declarations does not reveal any ambiguity relating to the swimming pool. These instruments clearly and unambiguously demonstrate that no cross-easements were granted for the use of a swimming pool. Since there is no ambiguity, we do not construe the terms but simply apply their ordinary meanings. Thus, the term "common garden or lawn areas" is not construed, but its plain meaning is utilized.

*Webster's New Third International Dictionary* (1976) defines the word "common" as:

> of or relating to a community at-large; held, enjoyed, experienced or participated in equally by a number of individuals: possessed or manifested by more than one individual.

The term "garden" is defined as:

> a plot of cultivated ground adjacent to a dwelling and usually devoted in whole or in part to the growing of herbs, fruits, flowers or vegetables for household use; a tract of land devoted to the raising of crops; a natural grove; a rich, well-cultivated region; a public area of recreation or park.

Further, *Webster's* defines the term "lawn" as:

> an open space between woods; ground covered with grass and not tilled; ground covered with fine grass kept closely mowed especially in front of or about a house or as part of a garden or park.

Clearly, the terms do not include a swimming pool. The granting language conveys easements in specific, particular common elements. The granting language does not

state that easements are given in all "common elements" or "common areas." In fact, none of the language found within the easement sections of the declarations uses the term "common areas." By declaring that respondents have an easement in all common elements and common areas, the trial court erred by construing the clear and unambiguous language of the instruments.

Therefore, there is no need to examine the expert testimony or drafters must be determined from these documents alone. *Byers,* 834 S.W.2d at 814[8].

Therefore, we reverse the trial court's judgment, and remand this cause with directions to enter a judgment declaring that respondents have no easement in perpetuity over the swimming pool of Aspen Ridge. Instead, respondents have easements only over those items specifically designated in the granting language of the cross-easement section of the Aspen Ridge Declaration, including "the roads, streets, access drives and pedestrian walks, unassigned parking spaces and common garden or lawn areas."

Judgment reversed and remanded.

PUDLOWSKI and AHRENS, JJ., concur.