John A. KUEHNLE and Julie R. Kuehnle, Appellants,

v.

Robert K. GRAY, Harmon V. Koser and James E. Dozier, as Trustees of Lake Thunderbird, Respondents.

No. 63516.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 23, 1993.

Dale C. Doerhoff, Jefferson City, for appellants.

Gordon Rolla Upchurch, Union, for respondents.

CRIST, Judge.

John and Julie Kuehnle (Owners) filed an action to void the liens placed on Lot 34 by the Trustees of the Lake Thunderbird property association (Trustees) for nonpayment of assessments. The Trustees counterclaimed for $801.33, the amount of all past due assessments on Lot 34, plus interest thereon. The trial court found in favor of Trustees. We affirm.

The parties stipulated Lot 34 was subject to an Indenture of Restrictions, dated November 16, 1969, and recorded on December 26, 1969. The pertinent part of the Indenture of Restrictions reads as follows:

> For the purpose of defraying the costs and expenses which may be incurred in the execution of the Trust by Trustees, *they may levy assessments against the respective lots contained in said subdivision in such amount as they deem necessary,* but to be based upon a uniform rate per front foot, provided, however, that such assessments may be levied not more than once during each calendar year and no such assessment shall exceed $0.65 per front foot without the consent of owners of a majority of the lots contained in the subdivision.... *All such assessments shall become a first lien on the land assessed by March 1 of the year in which assessment is made as of January 1, unless lien is subordinated by Trustees, in writing, to other liens, or unless the assessments are paid.* Assessments shall be payable sixty days after the date levied and shall thereafter bear interest at a rate of six per cent (6%) per annum until paid, and the collection thereof may be enforced by suits at law instituted by the Trustees against any *property owner of a lot on which lien shall remain undischarged and successors in interest to such lot.* (emphasis added).

Lake Thunderbird Inc., was the record owner of Lot 34 on the date this indenture was recorded. Pursuant to this indenture, the Trustees have levied assessments on all lots in the subdivision on an annual basis. On June 19, 1985, Lake Thunderbird, Inc., transferred Lot 34 to Landmark International, Inc. (Landmark) by a Warranty Deed which contained the following notation:

> Grantor makes no warranty as to the existence of liens of any nature any and all assessments for maintenance and this conveyance is made subject to such encumbrances, if any exist.

As of the date of this transfer, liens on Lot 34 had only been recorded for the assessments owed in years 1977 and 1981.

On May 20, 1986, the Trustees recorded a "Notice of Levy of Assessment of Lien" for assessments due on Lot 34 for the years 1978–1980 and 1982–1986 totalling $545.84. On April 17, 1987, Landmark entered into a contract to sell Lot 34 to Owners. Landmark conveyed title to Owners by a Warranty Deed dated February 15, 1990 and recorded February 22, 1990. The warranty deed contained the following notation:

> Grantor makes no warranty as to the existence of maintenance assessment liens subsequent to 19 June 1985 and this conveyance is made subject to such encumbrance, if any exist.

Owners brought suit attempting to have the liens for nonpayment of assessments in years 1978–1980 and 1982–1986 declared null and void. At trial, Owners admitted liability for assessments in years 1978 and 1981 but argued they were not liable for any past due assessments for 1978–1980 and 1982–1986 because the liens for these years were not recorded until after Landmark, their predecessor in interest, acquired title to the property. The trial court found:

> although a 'notice of lien' was recorded by the Trustees reflecting the nonpayment of assessments from time to time over the years, this Court finds that Plaintiffs were placed on notice of the existence of the assessment by the Indenture above-referenced, which Indenture did not require the Trustees to record a 'notice of lien' as a

condition precedent to the existence and enforceability of such liens.

■ In Point I, Owners allege the assessment liens for the years 1978–1980 and 1982–1986, which were not recorded until 1986, are invalid and unenforceable because: (1) the liens were not assessed and perfected each year as required under the indenture; (2) the amount of the liens was not established until after Landmark, their predecessor in interest, acquired title; and (3) the liens were not recorded on an annual basis or at any time before Landmark acquired title. We disagree.

First, nothing in the indenture requires the liens be perfected in order to be valid. The indenture merely requires the assessments be made by January 1 to become a lien on the property by March 1. No evidence was presented at trial indicating the assessments were not properly made by January 1 each year. Owners' brief also admits, "the dispute is not over assessments but rather over a claim of *lien* by the Trustees."

■ Second, Owners argue they are not subject to the liens because they were recorded after Landmark, their predecessor in interest, took title to the land without notice of the unrecorded liens. Although the liens were not recorded until after Landmark acquired title, the indenture provides assessments made by January 1 automatically become a lien on the property as of March 1 of that year. The indenture was properly recorded at the time Landmark took title to Lot 34; therefore, Landmark is deemed to have notice of the provisions therein. *Hamrick v. Herrera*, 744 S.W.2d 458, 461[5] (Mo.App.1987).

Finally, Owners rely on *Phillips v. Authorized Investors Group*, 625 S.W.2d 917, 920[5] (Mo.App.1981), in arguing the liens are invalid because they were not recorded before Landmark acquired title. In *Phillips*, a case also involving assessments levied pursuant to a recorded indenture, the court held the liens for past due assessments were not valid until recorded. However, the indenture in *Phillips* specifically stated, "... assessments shall become a first lien on the land assessed from the date of recorded assessment filed in the Recorder's Office...." Here, the indenture contains no such requirement. Therefore, the trial court correctly found these past due assessments became a lien on the land and recording a "notice of lien" was not a condition precedent to the existence and enforceability of such liens. *Stevens v. Annex Realty Company*, 173 Mo. 511, 73 S.W. 505, 507 (1903); *See also, Big River Hills Ass'n Inc. v. Altmann*, 747 S.W.2d 738, 741 (Mo.App.1988).

■ In Point II, Owners argue enforcement of the liens is barred by § 516.120.1, RSMo 1986, which states a five-year statute of limitations applies to:

All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 526.110, and except upon judgment or decrees of a court of record, and except where a different time is herein limited.

Trustees argue enforcement of the liens is governed by § 516.010, RSMo 1986, which applies to actions for recovery of lands, tenements, or hereditaments. This court previously stated in *Terra Du Lac Property Owners' Ass'n v. Wideman*, "restrictive covenants are easements which run with the land and hence are hereditaments." 655 S.W.2d 803, 805 n. 1 (Mo.App.1983). Therefore, § 516.-010 applies to this case.

■ Further, the statute of limitations is an affirmative defense which must be raised in the responsive pleading. Rule 55.08. Owners did not raise this claim in their answer to Trustees' counterclaim to enforce the lien; therefore they are barred from raising it on appeal. *Detling v. Edelbrock*, 671 S.W.2d 265, 271[17] (Mo. banc 1984). Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.